UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK             FOR ONLY PUBLICATION ONLY
----------------------------------------------------------------- X
ALQUEIO HERNANDEZ, on his own behalf            :
and on behalf of all others similarly situated,  :
                                                 :
                              Plaintiff,         :
                                                 :        MEMORANDUM
          - against -                            :        AND ORDER
                                                 :
THE AFFILIATED GROUP, INC. d/b/a                 :        04CV4467 (JG)
AFFILIATED CREDIT SERVICES,                      :
                                                 :
                              Defendant.         :
----------------------------------------------------------------- X

A P P E A R A N C E S :

    KATZ & KLEINMAN, PLLC
        626 Reckson Plaza
        Uniondale, New York 11556
    By:   Lawrence Katz
        Attorneys for Plaintiff

    ARTHUR SANDERS, ESQ.
        2 Perlman Drive, Suite 301
        Spring Valley, New York 10977
        Attorney for Defendant

JOHN GLEESON, United States District Judge:

        Alqueio Hernandez brought this action for damages under the Fair Debt Collection Practices Act ("FDCPA"). Hernandez alleges that a letter sent to him by Affiliated Credit Services ("Affiliated") seeking to collect a debt of $25.85 on behalf of Genesis Financial Solutions, Inc. ("Genesis") did not contain "the name of the creditor to whom the debt is owed" as required by 15 U.S.C. § 1692g(a)(2). The plaintiff moves for judgment on the pleadings and for class certification, and the defendant cross-moves for summary judgment. Oral argument was held on the motions on Friday, January 6, 2006. Because the name of the creditor was plainly

stated on the reverse side of the letter Hernandez received, and because no information on the front side of the letter contradicted or confused that disclosure, the defendant's motion for summary judgment is granted. Hernandez's motion for judgment on the pleadings is accordingly denied, and the motion for class certification is denied as moot.

BACKGROUND

Hernandez held an account for electrical service with Smart Energy, Inc., a re-seller of power for Con Edison. When Hernandez's account became overdue, Smart Energy referred the debt to Affiliated for collection. Smart Energy then sold the debt, along with many other accounts, to Peak Financial Performers, which again referred the same debts to Affiliated for collection. Peak Financial Performers in turn sold the debt to Genesis Financial Solutions, and Genesis, for a third time, referred the debts to Affiliated. Affiliated then sent Hernandez the letter that is the subject of this action.

The body of the letter Affiliated sent Hernandez stated that "Your account has been placed for collection and payment in full is due. The above listed account has been turned over to us by our client ...." At the top right of the front side of the letter, under the heading "Account Identification," is the following: "Client: 153910." The parties agree that in place of "153910" should have been "Genesis Financial Solutions, Inc.," but through a software glitch at Affiliated, a number meaningless to the reader appeared instead. Nowhere on the front side of the letter is any other party identified as the client or creditor. The letter did, however, notify Hernandez that upon written request "within 30 days after receiving this notice," Affiliated would "provide [him] with the name and address of the original creditor, if different from the current creditor." Further, the letter states, in a stand-alone sentence: "Please see reverse side for

2

important privacy information."

The first sentence on the back of the letter, under the heading "GENESIS FINANCIAL SOLUTIONS, INC. PRIVACY NOTICE," reads as follows: "You are receiving this notice because Genesis Financial Solutions, Inc. ... is the owner of one or more of your accounts, which we have acquired from the lender or other person that previously help [sic] your account." The parties agree "help" should have been "held." Affiliated sent out approximately 45,000 letters in the same batch as Hernandez's, all of which apparently contained the same errors.

## ANALYSIS

The FDCPA requires a debt collector to inform a consumer in writing, "within five days after the initial communication ... in connection with the collection of any debt," among other things, of "the name of the creditor to whom the debt is owed" and "that, upon the consumer's written request within [thirty days of receiving the notice], the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. § 1692g (a)(2), (5). Affiliated was therefore not required to provide Hernandez with the name of the original creditor, Smart Energy, even though that was likely the only entity that would have identified to him the origin of his obligation. Affiliated was required to provide Hernandez with the name of the creditor to whom the debt was owed, Genesis.

In determining whether a dunning letter violations the FDCPA, the "least sophisticated consumer" standard applies, the "basic purpose" of which "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). As the Second Circuit has emphasized, however, "in crafting a norm

that protects the naive and the credulous[,] the courts have carefully preserved the concept of reasonableness." Id. at 1319. "[E]ven the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id*.

Indeed, in *McStay v. I.C. System, Inc.*, the Second Circuit held that "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back. So long as nothing on the front of the letter overshadows or contradicts the validation notice, the FDCPA does not require the notice to be printed on the front." 308 F.3d 188, 191 (2d Cir. 2002); *see also Russell v. Equifax ARS*, 74 F.3d 30, 34 (presuming debt collection letter should be read in its entirety); *Clomon*, 988 F.2d at 1319, citing with approval *Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404, 1411 (D.Conn. 1990) (in the *Clomon* Court's characterization: "approving collection notice even though required disclosures were printed only on the back of the notice, since language on the front directed consumers to read the reverse").

As noted above, the front of the letter in this case contained nothing to contradict the plain notice on the reverse that Genesis Financial Solutions "is the owner of one or more of your accounts." Despite the plaintiff's suggestion to the contrary, I conclude that even the least sophisticated consumer would well understand from this statement that Genesis owned the account referenced on the front of the letter and not some other, unrelated account. The FDCPA "protects debt collectors against liability for [such] bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.3d at 1320.

The plaintiff's only remaining argument is that the notice on the front of the letter

("Please see the reverse side for important privacy information") was sufficiently different from McStay's analogous referral ("Notice: See reverse side for important information"), 308 F.3d at 189, to warrant an opposite result. However, there is little difference between the two notices except the one in this case includes the word "privacy." The plaintiff argues that a consumer left curious from the front of the letter as to the identity of the creditor but having no particular interest in "privacy" would not bother even to glance at the reverse side of the letter. I disagree.

The reader is referred to the back page for important information, and whether about privacy or any other important topic, in my view even the least sophisticated consumer would turn the page. Indeed, when a collection letter is no more than two pages in length, the presumption of "a willingness to read a collection notice with some care," *Clomon*, 988 F.3d at 1319, can hardly mean anything if it does not include an expectation that the debtor will persevere to the second page for at least a quick skim. As noted, "GENESIS FINANCIAL SOLUTIONS, INC." appears in all capitals on the top line of the reverse side, and the first sentence identifies Genesis as the creditor. As the plaintiff concedes, there was nothing on the front of the letter to overshadow that notice: "the issue is not whether the least sophisticated consumer was misled into believe into believing the creditor was 153910, but whether the letter conveyed to the consumer the name of the creditor." Plaintiff's Mem. at 5. I conclude it did, and therefore the letter did not violate the FDCPA.

I note that even if the letter did violate § 1692g, Affiliated has satisfied the requirements of the "bona fide error" defense. Section 1692k(c) provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding

the maintenance of procedures reasonably adapted to avoid any such error.
There is no dispute that the substitution of "153910" in place of Genesis on the front of the letter was unintentional. Paul Skovbroten, Affiliated's Secretary, submitted an affidavit stating:

> The error resulted from a unique set of circumstances that had never previously occurred in our company .... We were unaware of the glitch in our software as it had never manifested itself on previous placements received from other creditor clients. It is rare for debt that is repeatedly resold to be continually placed with the same collection agency.

Affidavit at ¶ 5, 11. The plaintiffs do not dispute these assertions, but instead contend that because of the massive number of letters Affiliated was sending out, any reasonable system for detecting mistakes would have caught the error here, and that "[t]his error could have easily been detected had the defendant read the letter in its final form." Plaintiff's Reply Mem. at 3.

Any typographical or clerical error, however, could be detected by close reading, yet the Congress chose to provide debt collectors with a defense against liability for such errors so long as reasonable procedures are adapted to prevent them. When, as in this case, individual letters are generated from a template by an automated process of inserting particular information for each letter from fields in a electronic database -- commonly called, in its simplest form, a "mail merge" -- an error need only occur once, namely, in the software directing the mail merge, to be repeated an inordinate number of times. The letter at issue here obviously contained a field designed to disclose "the name of the creditor to whom the debt is owed" in compliance with §1692g (a)(2). The mail merge software merely assigned the wrong field in the database to fill that slot in the letter. Coding glitches such as this, due to unpredicted and unprecedented business circumstances, are inevitable in the modern world, and the Congress has deemed them, when genuinely unintentional, to be an insufficient basis for liability under the Act. Particularly

where, as here, the glitch resulted not in the elimination of a required piece of information, but rather its location elsewhere in the letter, the bona fide error defense is appropriately invoked.[1]

CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted. The plaintiff's motion for judgment on the pleadings is denied, and the motion for class certification is denied as moot.

So ordered.

Dated:    Brooklyn, New York
          January 12, 2006

---

[1] I am aware the Second Circuit has previously acknowledged the "economic necessity of mass mailing in the debt collection industry," yet held that "[n]o mass mailing technique is permissible -- regardless of how effective it might be -- if that technique constitutes a false, deceptive, or misleading communication." *Clomon*, 988 F.3d at 1321. I do not depart from that holding here. In *Clomon*, the court addressed a practice it found to be intentionally misleading: "the use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent," and "in a mass mailing, these implications are frequently false." *Id*. No such intentional deception is even remotely detectable in this case.